1

2

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

3

4

5

6

7

8

| | |
|---|---|
| LARRY D. DAVIS, | )  No. C 03-4412 JSW (PR) |
| Plaintiff, | )  **ORDER GRANTING SUMMARY** |
| v. | )  **JUDGMENT TO DEFENDANTS VAN** |
| | )  **PELT AND DAWSON, AND ORDERING** |
| | )  **PLAINTIFF TO FILE A NOTICE OF** |
| DONALD CALVO, ET AL., | )  **CONTINUED INTENT TO PROSECUTE** |
| | )  **THIS ACTION AGAINST DR. CALVO** |
| Defendants. | ) |
| _____ | )  (Docket no. 24) |

9

10

## INTRODUCTION

11        Plaintiff Larry D. Davis, a state prisoner confined at San Quentin State Prison

12   (SQSP), filed this *pro se* civil rights complaint under 42 U.S.C. § 1983 complaining of

13   inadequate medical care by prison doctors and others at SQSP for a chronic back injury.

14   In an order dated March 28, 2005, the Court found that Plaintiff had stated a cognizable

15   claim for deliberate indifference to his serious medical needs and ordered the United

16   States Marshal's (USM) office to serve the amended complaint on Dr. Van Pelt, medical

17   clerk Therese Dawson, and Dr. Donald Calvo, all at SQSP.  On August 5, 2005, Dr. Van

18   Pelt and Therese Dawson filed a motion for summary judgment.  In an order dated

19   January 13, 2006, the Court directed Plaintiff to file his opposition on or by February 10,

20   2006 and informed the parties that no further extensions would be granted absent

21   extraordinary circumstances.  Plaintiff has not filed an opposition, nor has he

22   communicated with the Court since August 30, 2005.  Also in its most recent order the

23   Court directed the Clerk of the Court to send a request to the Legal Affairs Division of

24   the California Department of Corrections in an attempt to obtain a service address for Dr.

25   Calvo, for whom the USM's original attempt at service was returned unexecuted.  On

26   February 17, the Court received from defense counsel the service information for Dr.

27   Calvo.

28        For the reasons discussed below, the Court grants summary judgment to Dr. Van

1    Pelt and Therese Dawson, and directs Plaintiff to file a notice of his continued intent to

2    prosecute this action against Dr. Calvo.

3                                    **STANDARD OF REVIEW**

4            Summary judgment is properly granted when no genuine and disputed issues of

5    material fact remain and when, viewing the evidence most favorably to the non-moving

6    party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56;

7    *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*,

8    815 F.2d 1285, 1288-89 (9th Cir. 1987).

9            The moving party bears the burden of showing that there is no material factual

10   dispute.  Therefore, the Court must regard as true the opposing party's evidence, if

11   supported by affidavits or other evidentiary material.  *Celotex*, 477 U.S. at 324;

12   *Eisenberg*, 815 F.2d at 1289.  The Court must draw all reasonable inferences in favor of

13   the party against whom summary judgment is sought.  *Matsushita Elec. Indus. Co. v.*

14   *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Intel Corp. v. Hartford Accident &*

15   *Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

16           Material facts which would preclude entry of summary judgment are those which,

17   under applicable substantive law, may affect the outcome of the case.  The substantive

18   law will identify which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

19   242, 248 (1986).  Where the moving party does not bear the burden of proof on an issue

20   at trial, the moving party may discharge its burden of showing that no genuine issue of

21   material fact remains by demonstrating that "there is an absence of evidence to support

22   the nonmoving party's case." *Celotex*, 477 U.S. at 325.  The burden then shifts to the

23   opposing party to produce "specific evidence, through affidavits or admissible discovery

24   material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404,

25   1409 (9th Cir. 1991), *cert. denied*, 502 U.S. 994 (1991).  A complete failure of proof

26   concerning an essential element of the non-moving party's case necessarily renders all

27

28                                            2

1    other facts immaterial.  *Celotex*, 477 U.S. at 323.

2         A district court may not grant a motion for summary judgment solely because the

3    opposing party has failed to file an opposition.  *See Cristobal v. Siegel*, 26 F.3d 1488,

4    1494-95 & n.4 (9th Cir. 1994) (unopposed motion may be granted only after court

5    determines that there are no material issues of fact).  This is so even if the failure to

6    oppose violates a local rule.  *See Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir.

7    2003) (nonmoving party's failure to comply with local rules does not excuse moving

8    party's affirmative duty under Rule 56 to demonstrate its entitlement to judgment as a

9    matter of law); *see, e.g., Evans v. Indep. Order of Foresters*, 141 F.3d 931, 932 (9th Cir.

10   1998) (finding district court committed reversible error of law by granting summary

11   judgment for defendant solely pursuant to local rule providing that failure to respond

12   constitutes consent); *United States v. Real Property at Incline Village*, 47 F.3d 1511,

13   1519 (9th Cir. 1995) (local rule cannot mandate automatic entry of judgment for moving

14   party without consideration of whether motion and supporting papers satisfy Fed. R. Civ.

15   P. 56), *rev'd on other grounds sub nom. Degen v. United States*, 517 U.S. 820 (1996);

16   *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 950 (9th Cir. 1993) (same).  However, if the

17   local rule does not require, but merely permits the court to grant a motion for summary

18   judgment, the court has discretion to determine whether noncompliance should be

19   deemed consent to the motion.  *See Brydges v. Lewis*, 18 F.3d 651, 652-53 (9th Cir.

20   1994) (inmate's failure to respond to prison officials' motion for summary judgment after

21   court warning, properly deemed consent to motion for summary judgment).  A district

22   court, of course, always may grant an unopposed motion for summary judgment if the

23   movant's papers are themselves sufficient to support the motion and do not on their face

24   reveal a genuine issue of material fact.  *See Incline Village*, 47 F.3d at 1520; *Henry*, 983

25   F.2d at 950.

26        A verified complaint may be used as an opposing affidavit under Rule 56, as long

27

28
                                              3

as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge); *see also Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996), *amended*, 135 F.3d 1318 (9th Cir. 1998) (treating allegations in prisoner's verified amended complaint as opposing affidavit).

## STATEMENT OF FACTS

Because Plaintiff has not filed an opposition to the motion for summary judgment, the following statement of facts is based on the allegations contained in Plaintiff's verified amended complaint and on the declarations and exhibits submitted by Defendants in support of the motion for summary judgment. The facts are undisputed unless otherwise noted.

Dr. Van Pelt

Plaintiff arrived at SQSP in 1990. At the time he was in a wheelchair and suffered from spine and back injuries. Plaintiff's amended complaint alleged causes of action for deliberate indifference to his serious medical needs starting in 1990 through 2003. The Court found that the claims Plaintiff asserted against Dr. Van Pelt which arose before 2001 were barred by the applicable statute of limitations.

On February 22, 2001, Plaintiff was seen by Dr. Martin in the SQSP urgent care clinic for complaints of low back pain. The medical record from the visit shows that Dr. Martin diagnosed Plaintiff with a lumbar-sacral sprain with muscle spasms and sciatica. He prescribed pain medication and muscle relaxants and referred Plaintiff to sick call. Plaintiff asserts that Dr. Martin ordered an MRI, but the medical record notations do not show that an MRI was ordered. (Declaration of Dr. Van Pelt in Support of Defendants'

4

Motion for Summary Judgment, Ex. A.)

On March 8, 2001, Dr. Van Pelt saw Plaintiff in sick call.  He continued Plaintiff's pain and muscle spasm medication and ordered a lumbar-sacral X-ray.  (Ex. A, B and C.)  The medical records show that the X-ray was taken on March 13 and read by the radiologist on March 15, 2001.  (Ex. C.)  Dr. Van Pelt saw Plaintiff in sick call again on March 29, 2001.  At that time, Plaintiff complained that his back was getting worse and that he had blood in his urine.  Dr. Van Pelt suspected he might be passing a kidney stone and he ordered a KUB, an X-ray which images the kidneys, ureters and bladder, and a urinalysis.  (Van Pelt Decl., Ex. D.)

Dr. Van Pelt saw Plaintiff again in sick call on April 4, 2001.  Plaintiff complained of more bloody urine and right flank pain.  This time, Dr. Van Pelt ordered a KUB "stat," that is, to be taken right away.  He reviewed the KUB later that same day.  No kidney stone could be seen.  Dr. Van Pelt also asked Plaintiff to strain his urine to look for stones and he ordered a urology consultation.  (*Id.*)  On April 10, 2001, the medical record shows that some of Plaintiff's prescriptions were renewed, but Plaintiff refused to be seen at sick call.  (Van Pelt Decl., Ex. E.)

On April 25, 2001, Plaintiff complained of pain in his back and down both legs.  Dr. Van Pelt ordered thoracic and lumbar X-rays.  He offered to write a note for Plaintiff to have a lower bunk, due to his back pain, but Plaintiff refused.  (*Id.*, Ex. F.)  On April 27, 2001, Plaintiff was seen in the urology clinic and prescribed medication.  (Ex. G.)

On May 4, 2001, Nicholas J. Capozzoli, M.D., a neurologist, saw Plaintiff for his chronic back problems.  He thought that an MRI or CT scan would be reasonable.  He told Plaintiff it could take some time to schedule an MRI and Plaintiff agreed he should order one.  (*Id.*)  Dr. Capozzoli submitted the MRI request that same day.  On June 19, 2001, after approval by Dr. Calvo, the Chief Medical Officer, an MRI was scheduled for July 19, 2001.  (*Id.*)

On May 10, 2001, Dr. Van Pelt saw Plaintiff in sick call.  Plaintiff reported that the medication was helping with his trunk pain.  (Van Pelt Decl., Ex. H.)  Dr. Van Pelt did not see Plaintiff again and has no information or knowledge as to whether Plaintiff asked to be seen in sick call after May 10, 2001.  Dr. Van Pelt was rotated out of East Block sick call at some point in the spring or early summer of 2001.  (*Id.*)

Therese Dawson

Therese Dawson was hired to work as an Office Assistant/Typist at SQSP on July 23, 2001.  She received on-the-job training as a medical scheduler and began scheduling patients for out-of-prison medical appointments.  (Dawson Decl.)  She has no medical training and no nursing training.  (*Id.*)  In her job, she never had the decision-making authority as to whether an appointment was medically necessary.  Her job was strictly clerical.  She received approved requests for out-of-prison appointments and she scheduled the appointments.  (*Id.*)

On October 31, 2001, Dr. Capozzoli, the neurologist, examined Plaintiff at the request of Dr. Calvo.  He requested an MRI of Plaintiff's cervical spine.  This request was approved by Dr. Calvo the same day.  Ms. Dawson scheduled an MRI appointment for Plaintiff and the MRI was taken o n December 12, 2001.  (*Id.*, Ex. J.)

On October 31, 2001, Dr. Capozzoli also requested a neurosurgical consultation.  This request was also approved by Dr. Calvo on the same day.  (*Id.*, Ex. J, K.)  Ms. Dawson states that she was informed and believed that Dr. Grollmus, the neurosurgeon who contracted with SQSP, would not see a patient without an MRI.  (*Id.*)  After the MRI results were reported back to SQSP and before the end of September 2002, Ms. Dawson set up the first of five separate appointments for Plaintiff with Dr. Grollmus.  (*Id.*)  On April 17, 2002, Mr. Dawson received an approved request for Plaintiff to have a neurosurgical consultation.  She scheduled Plaintiff for May 13, 2002, a date given to her by Dr. Grollmus's office.  (Ex. L.)  The appointment was postponed by Dr.

6

Grollmus's office. (Dawson Decl.) On or about July 1, 2002, Ms. Dawson received an approved request for Plaintiff to have a neurosurgical consultation. She scheduled Plaintiff for July 22, 2002, a date given to her by Dr. Grollmus's office. (*Id.*, Ex. M.) On or about July 24, 2002, Ms. Dawson learned that Dr. Grollmus had cancelled Plaintiff's appointment. Ms. Dawson rescheduled Plaintiff for September 4, 2002, a date given to her by Dr. Grollmus's office. (*Id.*, Ex. N.) On or about September 4, 2002, Ms. Dawson learned that Dr. Grollmus had to reschedule Plaintiff. She rescheduled Plaintiff for September 9, 2002, a date given to her by Dr. Grollmus's office. (*Id.*, Ex. O.) Dr. Grollmus saw Plaintiff on or before September 30, 2002. (*Id.*, Ex. P.) None of the requests which Ms. Dawson received for Plaintiff's out-of-prison medical appointments was designated as urgent. (*Id.*)

On September 30, 2002, Dr. Grollmus suggested that facet blocks be considered for Plaintiff. (*Id.*, Ex. P.) On October 9, 2002, the facet blocks were approved. (*Id.*, Ex. Q.) Ms. Dawson was not involved in setting up this appointment. (*Id.*) Between October 2002 and April 2003 Ms. Dawson missed numerous days of work due to illness. She was out on sick leave, full-time, from April 14, 2003, to August 18, 2003. When she returned to SQSP, she was placed into another position which did not involve medical scheduling. (*Id.*)[1]

## DISCUSSION

I.    LEGAL CLAIMS

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en

---

[1]Ms. Dawson cites to certain exhibits to support her declaration about her absence from work, but the Court cannot find them in the exhibits attached to the motion for summary judgment. In any event, the Court does not rely upon these facts to find in Ms. Dawson's favor.

banc).  A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need.  *Id.* at 1059.

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."  *Id.* (citing *Estelle*, 429 U.S. at 104).  The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment.  *Id.* at 1059-60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  In order for deliberate indifference to be established, there must be a purposeful act or failure to act on the part of the defendant and resulting harm.  *See McGuckin*, 974 F.2d at 1060; *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  A finding that the defendant's activities resulted in "substantial" harm to the prisoner is not necessary, however.  Neither a finding that a defendant's actions are egregious nor that they resulted in significant injury to a prisoner is required to establish a violation of the prisoner's federal constitutional rights.  *See McGuckin*, 974 F.2d at 1060, 1061 (citing *Hudson v. McMillian*, 503 U.S. 1, 7-10 (1992) (rejecting "significant injury" requirement and noting that Constitution is violated "whether or not significant injury is evident")).

Once the prerequisites are met, it is up to the factfinder to determine whether deliberate indifference was exhibited by the defendant.  Such indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it

8

may be shown in the way in which prison officials provide medical care. *See id.* at 1062.
"A difference of opinion between a prisoner-patient and prison medical authorities
regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d
1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of
medical opinion as to the need to pursue one course of treatment over another is
insufficient, as a matter of law, to establish deliberate indifference, *see Toguchi v.
Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th
Cir. 1989); *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970); however, the reliance
by prison officials upon a second medical opinion which a reasonable person would
likely determine to be inferior to one from a more qualified medical authority may
amount to an Eighth Amendment violation. *See Hamilton v. Endell*, 981 F.2d 1062,
1066-67 (9th Cir. 1992) (prison's reliance upon medical opinion of doctor who had not
examined plaintiff as opposed to plaintiff's regular physician violated prisoner's
constitutional rights). In order to prevail on a claim involving choices between
alternative courses of treatment, a plaintiff must show that the course of treatment the
doctors chose was medically unacceptable under the circumstances and that they chose
this course in conscious disregard of an excessive risk to plaintiff's health. *See Toguchi*,
391 F.3d at 1058.

   A plaintiff need not prove complete failure to treat. Deliberate indifference may
be shown where access to medical staff is meaningless as the staff is not competent and
does not render competent care. *See Lolli v. County of Orange*, 351 F.3d 410, 420-21
(9th Cir. 2003) (holding that a jury could infer that correctional officers' failure to
provide medical care in response to detainee's extreme behavior, sickly appearance and
statements that he was diabetic and needed food demonstrated deliberate indifference);
*Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) (en banc) (summary judgment
should not have been granted to defendants where plaintiff presented evidence that

1   prison officials failed and refused to follow doctor's orders for a liquid diet for plaintiff

2   whose mouth had been wired shut to treat a broken jaw); *Ortiz v. City of Imperial*, 884

3   F.2d 1312, 1314 (9th Cir. 1989) (summary judgment reversed where medical staff and

4   doctor knew of head injury, disregarded evidence of complications to which they had

5   been specifically alerted and without examination prescribed contraindicated sedatives).

6        Although prison authorities have "wide discretion" in the medical treatment

7   afforded prisoners, *see Stiltner v. Rhay*, 371 F.2d 420, 421 (9th Cir.), *cert. denied*, 387

8   U.S. 922 (1967), delay providing surgery in which the delay proved harmful could

9   amount to deliberate indifference, *see Shapely,* 766 F.2d 407, as could a failure to

10  provide treatment because of a tight budget, *see Jones v. Johnson*, 781 F.2d 769, 771 (9th

11  Cir. 1986).  In deciding whether there has been deliberate indifference to an inmate's

12  serious medical needs, the court need not defer to the judgment of prison doctors or

13  administrators.  *See Hunt v. Dental Dep't* , 865 F.2d 198, 200 (9th Cir. 1989) .

14  III.    ANALYSIS

15          Dr. Van Pelt

16       Plaintiff alleges that Dr. Van Pelt failed to order the MRI which had been

17  authorized by Dr. Martin on February 22, 2001, and that he over-prescribed pain

18  medication for Plaintiff.  However, even when the facts are viewed in a light most

19  favorable to Plaintiff, he has not established that Dr. Van Pelt acted with deliberate

20  indifference.

21       First, apart from Plaintiff's conclusory assertion, there is no evidence that an MRI

22  was authorized by Dr. Martin on February 22, 2001.  And even if Dr. Martin did tell

23  Plaintiff that he was authorizing an MRI, he made no chart notation to that effect, and

24  there is absolutely no evidence to support Plaintiff's assertion that Dr. Van Pelt knew that

25  an MRI had been authorized.

26       When Dr. Van Pelt saw Plaintiff for the first time on March 8, 2001, he prescribed

27

28                                                    10

1    pain medications and muscle relaxants and ordered an X-ray of Plaintiff's back.  On

2    April 25, 2001, the next time Plaintiff complained to Dr. Van Pelt about varying back

3    pain, Dr. Van Pelt promptly ordered a different set of back X-rays.

4         With regard to the medications, Dr. Van Pelt states that he never prescribed more

5    than a thirty day supply for Plaintiff.  Moreover, even if true, Plaintiff's assertion that Dr.

6    Van Pelt continued to prescribe medication even when Plaintiff told him it wasn't

7    working does not call into question the undisputed facts which show that Dr. Van Pelt

8    also continued with attempts to properly diagnose and remedy Plaintiff's complaints of

9    pain through other measures.

10        Dr. Van Pelt saw Plaintiff five times during a two-month period, in which he

11   ordered multiple X-rays of the mid-back, the lower back, the kidney, the ureters and the

12   bladder, and prescribed pain medications and muscle relaxants.  Even when the facts are

13   viewed in a light most favorable to Plaintiff, they fail to establish as a matter of law that

14   Dr. Van Pelt acted with deliberate indifference to Plaintiff's serious medical needs.

15   Accordingly, summary judgment is GRANTED to Dr. Van Pelt.

16        Therese Dawson

17        Plaintiff maintains that Ms. Dawson acted with deliberate indifference to his

18   serious medical needs because she delayed scheduling an out-of-prison neurosurgical

19   consultation for him, and delayed in scheduling Plaintiff's out-of-prison back surgery.

20   First, Plaintiff has not presented evidence to refute Ms. Dawson's assertion that the

21   repeated re-scheduling of Plaintiff's out-of-prison neurosurgical consultation was outside

22   of Ms. Dawson's control, that is, the appointments which Ms. Dawson scheduled were

23   cancelled by Dr. Grollmus's office.  *See Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th

24   Cir. 2002) (doctor entitled to summary judgment where plaintiff presented no evidence

25   that delays between plaintiff's initial visit, diagnosis and visit to the specialist were

26   within the doctor's control or the doctor was deliberately indifferent to the medical needs

27

28                                             11

1  or that the delay contributed to plaintiff's injuries).  Nor has Plaintiff presented evidence

2  to refute Ms. Dawson's assertion that she was not the clerk who was assigned to schedule

3  Plaintiff's facet block procedure.  Moreover, even if, as Plaintiff asserts, Ms. Dawson

4  failed to act with appropriate diligence in scheduling his appointments, or even failed to

5  act at all, Plaintiff has presented simply no evidence which could establish that Ms.

6  Dawson acted with the requisite subjective intent for deliberate indifference.  Ms.

7  Dawson was a scheduling clerk with no medical training; any alleged delay, even if it

8  resulted in harm to Plaintiff, was the result, at most, of negligence on her part.

9  Accordingly, summary judgment is GRANTED to Ms. Dawson.

10  **NOTICE OF INTENT TO PROSECUTE**

11       In its January 13, 2006, order, the Court directed the Clerk of the Court to send a

12  request to the Legal Affairs Division of the California Department of Corrections in an

13  attempt to obtain a service address for Dr. Calvo, for whom the USM's original attempt

14  at service was returned unexecuted.  On February 17, the Court received from defense

15  counsel the service information for Dr. Calvo.  However, because the Court has not

16  heard from Plaintiff since August 2005, and Plaintiff did not file an opposition to Dr.

17  Van Pelt and Therese Dawson's motion for summary judgment, the Court will not

18  proceed to order the USM to re-attempt service on Dr. Calvo unless and until Plaintiff

19  notifies the Court that he intends to proceed with this action against Dr. Calvo.

20  Accordingly, within **twenty (20)** days from the date of this order, Plaintiff shall inform

21  the Court of his continued intent to prosecute this action against the one remaining

22  Defendant.  His failure to do so will result in the dismissal of the complaint against Dr.

23  Calvo for failure to prosecute.

24  **CONCLUSION**

25       For the foregoing reasons, the Court orders as follows,

26       1.  Summary judgment is GRANTED as to Defendants Dr. Van Pelt and Therese

27

28                                          12

1    Dawson.  The Clerk of the Court shall enter judgment in favor of these Defendants and

2    against Plaintiff.  (Docket no. 24.)

3         2.  Within **twenty (20)** days from the date of this order Plaintiff shall file a notice

4    of continued intent to prosecute this action against Defendant Dr. Calvo, as set forth

5    above.  The failure to do so will result in the dismissal of the complaint against Dr. Calvo

6    for failure to prosecute.

7         IT IS SO ORDERED.

8    DATED:  March 3, 2006

9

                                                          JEFFREY S. WHITE

10                             United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28